The libel against the Osseo must be dismissed, with costs, and, in the suit against the Sandy Hook, there must be a decree for the libellants, with costs, with a reference to ascertain the amount of the damages sustained by the libellants.

## Case No. 10,608.

### The OSSEO.

### The SANDY HOOK.

[16 Blatchf. 537; 8 Reporter, 328.] [1]

Circuit Court, S. D. New York. July 31, 1879. [2]

COLLISION — BETWEEN SAILING VESSELS — WIND FREE AND CLOSE-HAULED.

A sailing vessel having the wind free and a sailing vessel close-hauled collided. They were approaching each other very nearly end on, on courses which crossed not far from the place of collision. It being the duty of the former vessel to keep out of the way, she was held in fault for attempting to pass so close to the latter vessel, that a mistake of the latter vessel in luffing caused the collision. The latter vessel was held in fault for luffing, because she had no sufficient lookout, although the luffing was just at the moment of the collision.

[Cited in McWilliams v. The Vim, 12 Fed. 911.]

These were cross libels filed in the district court, in rem, in admiralty. The district court decreed against the Sandy Hook, and dismissed the libel against the Osseo [Case No. 10,607]. The Sandy Hook appealed to this court, in both suits. This court found the following facts: "Shortly after eight o'clock in the evening of March 11th, 1875, a collision occurred in Long Island Sound, a little to the northward of Stratford light boat, between the schooners Osseo and Sandy Hook. The Sandy Hook was of about two hundred tons burden, loaded with oysters, and bound from New York to New Haven. The Osseo had a carrying capacity of a little less than two hundred tons. She was deeply loaded with lath, and bound to New York. A part of her cargo was stowed on deck, about six feet high, and extending forward a little beyond the fore-mast. It came close up to the booms; and a person standing on the sides could not see under the sails, except at the bow and stern, where the deck was left clear. She was a keel vessel, without a centre-board, very crooked, and loaded so deep that the water came on deck midships. The wind was south, or a little east of south. The Sandy Hook was sailing east by north, half north, with the wind two points or more free. The Osseo was close-hauled, and steering by the wind, south-west by west, a little west. Both vessels had their regulation lights set and burning. The Sandy Hook had the wind on her starboard side, and the Osseo had it on her port side. The Sandy Hook was making about seven knots an hour, and the Osseo three or three and a half. The red light of the Osseo was seen from the Sandy Hook, a little off the port bow, when the vessels were a mile or more apart. The mate was on the lookout, and the light duly reported by him. The captain at once, on hearing the report, came on deck and took the wheel. The Sandy Hook kept steadily on her course, without any change, until just at the moment of the collision, when she luffed a little, to ease the blow. The lights on the Sandy Hook were not seen at all from the Osseo. Not many minutes before the collision, the watch on the Osseo was changed, her captain and one man going below, and the mate and another man coming on deck. There were only four men on board to stand the watches. The man coming on deck took the wheel from the captain, with instructions to steer by the wind and keep as close as he could. The mate went to the lee side, and walked

1 [Reported by Hon. Samuel Blatchford. Circuit Judge, and here reprinted by permission. 8 Reporter, 328, contains only a partial report.]

2 [Reversing Case No. 10,607.]

on the lath between the two masts, going no further forward than the fore-mast. The man at the wheel could not see at all to the leeward. The mate, while walking on the lath, noticed that the sails were shaking. He at once went aft, upon the windward side, and ordered the man at the wheel to keep them full. Having given this order, he looked at the compass, and then, jumping down on deck, looked under the mainsail, when, for the first time, he discovered the Sandy Hook close upon him. He ran forward and almost immediately hailed the approaching schooner to keep off. Just then the Osseo luffed, and the two vessels came together, the Osseo striking the Sandy Hook near the cathead, on the port side. The force of the blow was such as to cut into the Sandy Hook somewhat and to injure the stem of the Osseo. The Sandy Hook kept on her course, and swung the Osseo around, so that she headed eastward. In swinging around, the jib-boom of the Osseo was broken, and the vessels separated. The Sandy Hook kept on to New Haven without stopping. The Osseo, after clearing away the wreck, put about, and went to New York. Both vessels were somewhat injured, but not enough to delay materially the voyage of either. Up to the very moment of the collision there was no one on the deck of the Osseo except the mate and the man at the wheel. There was nothing to prevent the Sandy Hook from keeping far enough away from the Osseo to avoid all danger of collision."

Richard H. Huntley, for the Sandy Hook.
Robert D. Benedict, for the Osseo.

WAITE, Circuit Justice. There is much conflicting testimony in these cases, but a few controlling facts are substantially conceded on both sides. Thus, it is admitted that the Sandy Hook was sailing somewhat free, while the Osseo was close-hauled. This made it the duty of the Osseo to hold her course, and of the Sandy Hook to keep out of the way. Rev. St. § 4233, rules 17, 23. The two vessels were approaching each other very nearly end on, upon courses which crossed not far from the place of collision. The Osseo was first discovered a little over the port bow, and to the leeward, of the Sandy Hook. Her red light only was seen until just before the collision, though, it is evident, from the testimony, that it drew more and more over the bow, as the vessels came nearer together. It is not claimed that the Osseo changed her course materially until she luffed, and as, when the vessels came together, she was still swinging on her helm, and her sails were shaking, it is evident that the Sandy Hook held her course until she was too near for absolute safety. As it was her duty to keep out of the way, and there was plenty of room for her to do so, it was a fault for her to attempt to pass so

close that the luffing of the Osseo would produce a collision.

That the Osseo did luff just at the moment of the collision is, to my mind, certain. The original courses of the two vessels varied only about one point, and, if the collision had occurred where they crossed, it would have been end on, or nearly so. The Osseo was a keel vessel, deep in the water. Her own witnesses say her deck was under water midships. Had the vessels come together in that way, the concussion would have been very heavy, as the combined speed was, at least, ten miles an hour. It is difficult to believe, that, under such circumstances, the Sandy Hook could turn the bow of the Osseo around from west to east, break the jib-boom, clear herself from the entanglement of the collision, and keep on her voyage, without stopping or materially changing her course, as all agree she did. If, however, the Osseo did luff, and was heading well toward the south, when the vessels actually came together, all that subsequently occurred is easily explained. The momentum of the Sandy Hook, at the speed she was going, would be quite sufficient to carry the bow of the Osseo with her until the jib-boom broke, when there would be nothing to prevent her going off free.

Undoubtedly, this luff of the Osseo occurred when those on board supposed the danger was imminent, and when, under ordinary circumstances, it would not have been a fault; but, as it is apparent, from the testimony, that she had no sufficient lookout, and the mistake would not have been made if the Sandy Hook had been seen in time, that which would otherwise have been only an error connects itself with the fault of a want of lookout, and places the vessel in the wrong. The mate was the only person on deck who could act as lookout, but he was attending to the navigation of the vessel, and, besides, was not at his proper place. The evidence satisfies me that the Sandy Hook had her lights set and burning, and it is impossible to believe, that, if the mate had taken his place on deck at or near the bow, and had given attention to his business, he would not have seen the approaching vessel in time to have prevented the erroneous movement which was, as I think, the immediate cause of the collision. Had he noticed the Sandy Hook as she came up, he would have seen, that, in all probability, if he kept his course, as it was his duty to do, the vessels would go clear, and, at any rate, that to luff was the very worst thing to be done. I am, therefore, clearly of the opinion, that the Osseo was guilty of a fault which directly contributed to the collision.

Both vessels being at fault, the damages must be apportioned, and, as cross libels have been filed, the costs, in both courts, should, under the rule laid down by the circuit judge of this circuit, in Vanderbilt v.

Reynolds [Case No. 16,839], be divided equally. A decree may be prepared accordingly, and a reference ordered to ascertain the amount of damages sustained by the Sandy Hook and make the apportionment.